IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AZIM AZIZ and KINA AZIZ, | ) | |
| | ) | |
| Plaintiffs, | ) | Federal Court Case No. 4:14-cv-934 |
| | ) | |
| vs. | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## DEFENDANT'S TRIAL BRIEF

COMES NOW Defendant, Allstate Insurance Company ("Allstate"), by and through the undersigned counsel, pursuant to this court's Case Management Order of April 7, 2015, for its Trial Brief, states as follows:

### I.  Factual Background

This case arises out of a dispute over a fire loss claim presented under a homeowner's insurance policy. Allstate issued a homeowner's policy of insurance to Plaintiffs on the property located at 4931 Claxton Avenue, St. Louis, Missouri 63120. On May 12, 2006, a fire occurred at said property. Plaintiff subsequently presented a claim to Allstate under the policy, seeking to recover insurance proceeds for damages sustained to the dwelling and personal property.

Allstate commenced an investigation of Plaintiffs' claim. Based on its investigation, Allstate concluded that Plaintiffs concealed and misrepresented material facts regarding the claimed loss. Specifically, the Azizs made several false statements regarding the extent of their loss. Both Mr. and Mrs. Aziz gave sown testimony where both claim to have been living in the home, without the other, when the fire loss occurred. This sworn testimony is inconsistent with

their earlier recorded statements wherein it was claimed that Azim Aziz moved out of the dwelling two weeks before the fire and had not been back.

Additionally, Kina Aziz claimed approximately $55,000 in personal property as a result of this loss.  However, Ms. Aziz filed for bankruptcy on May 4, 2004, which was discharged on August 31, 2004 (approximately 1 year and 9 months prior to the fire).  In her bankruptcy Petition, she represented to the bankruptcy court, under penalty of perjury, that she had approximately $1,200 in household furnishings, and $300 in clothing. After the fire on May 12, 2006, Kina Aziz presented a claim to Allstate for the personal property damaged as a result of the fire.  Specifically, she claims $55,000 in personal property, $15,000 of which was clothing. When asked to explain how she accumulated $55,000 in personal property since her bankruptcy, Ms. Aziz's explanation was that many friends gifted these items to her because she was "simply blessed."

With respect to Azim Aziz, it also appears that he made similar misrepresentations regarding the nature and extent of the property in the home when the fire occurred.  Specifically, he is seeking recovery for approximately $14,000 in clothing and other items claimed to have been stored in one closet in his bedroom.  Allstate's investigation revealed that the items being claimed would not have fit in this closet.  Moreover, Azim could not sufficiently describe the items he was claiming, nor could he provide any documentation proving ownership of the items. Mr. Aziz also claimed that the items were in the closet when the fire occurred; however, Kina Aziz testified she had removed them from the closet before the fire.  It is unknown why Azim Aziz would not have known this fact considering he claims to have still been living there at the time of the fire.

Accordingly, based on the misrepresentations outlined above, Allstate denied Plaintiffs' claim.  Plaintiffs subsequently filed suit against Allstate in St. Louis City Circuit Court alleging breach of contract, vexatious refusal to pay, specific performance, unjust enrichment, and negligent misrepresentation.  Allstate removed the case to this Court.  Subsequently, Plaintiffs' claims for specific performance, unjust enrichment, and negligent misrepresentation were dismissed as a matter of law.

II.     Plaintiffs' claims against Allstate

In order to make a submissible claim against Allstate on its breach of contract claim, Plaintiffs must present evidence that: 1) Allstate issued its policy to Plaintiffs on the property covering loss due to fire; 2) such property was damaged by fire; and 3) the policy was in force on the date of the fire.  *MAI* 31.09; *Travers v. Universal Fire & Cas. Ins. Co.*, 34 S.W.3d 156 (Mo. App. 2000).

In order to make a submissible case against Allstate on their claim for vexatious refusal to pay, Plaintiffs must present evidence that Allstate refused to pay their claim without reasonable cause or excuse.  *MAI* 10.08; §375.296 RSMo. §375.420 RSMo.

III.    Factual and legal issues

**A.  Introduction**

As noted above, Allstate investigated the facts and circumstances surrounding the fire and concluded that Plaintiffs concealed and/or misrepresented material facts regarding the nature and extent of their property damaged in the fire and involved in their claim.  Accordingly, Allstate contends that there is no coverage pursuant to the following provision contained in the insurance policy:

* * *

  *Concealment or Fraud*.

* * *

  **We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

* * *

  **B.  Factual issues**

The primary factual issue to be tried to the jury will be whether Plaintiffs concealed and/or misrepresented any material facts regarding the nature and extent of their property damaged in the fire (i.e., whether Allstate's concealment or fraud affirmative policy defense is applicable).

There may also be factual issues with respect to the amount of damages sustained by Plaintiffs.

  **C.  Legal issues**

Under Missouri law, insurance policies are contracts to which rules of contract construction apply. *Hartford Underwriter's Ins. Co. v. Estate of Turks*, 206 F. Supp. 2d 968, 975 (E.D. Mo. 2002). An insurance policy is a written contract between the insurer and the insured, and each is bound by its terms. *Brattin Ins. Agency, Inc. v. Triple S. Properties, Inc.*, 77 S.W.3d 687, 688 (Mo. App. 2002). As with any contract, an analysis of coverage under policies begins with the language of the policies. *Cincinnati Ins. Co. v. Meramec Valley Bank*, 259 F. Supp. 2d 922, 927 (E.D. Mo. 2003).

Under Missouri law, the court must accept the written policy as the expression of the agreement made by the parties and give effect to the intentions of the parties as disclosed by clear and unambiguous language. *Wilson v. Concordia Farmers Mut. Ins. Co.*, 479 S.W.2d 159,

162 (Mo. App. 1972). Where language in an insurance policy is unequivocal, it must be given its plain meaning. *Id.*; *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18 (Mo. App. 1988).

> **I.  Judgment Should Be Entered in Allstate's favor Because the Evidence Will Show that the Plaintiffs Concealed and/or Misrepresented Material Facts and Circumstances Regarding the Extent and Nature of their Loss**

When an insured willfully overvalues property and misrepresents the extent of his loss and damage, the same may allow the insurer to avoid the policy and defeat any right of the insured to recovery thereon. See Hammond, R., Fraud and False Swearing: An Analysis of the Insurer's Right to Avoid Coverage, Fire and Arson Investigator (March, 1995); 16 A.L.R. 3d 779. Misrepresentations concerning the value of property and the nature and extent of damage sustained in a loss are material as a matter of law, and a misrepresentation as to any portion of a loss may void coverage for the entire claim. *Childers v. State Farm Fire & Casualty*, 799 S.W.2d 138 (Mo. App. 1990); *Galvan v. Cameron Mutual Insurance*, 733 S.W.2d 771, 773 (Mo. App. 1987).

Finally, in an action on an insurance contract, the insurer need not show that it relied upon such untruthfulness; the insurer need only show that facts were concealed or misrepresented. *Patterson v. State Automobile Mut. Ins. Co.*, 105 F.3d 1251 (8th Cir. 1997); *General Cas. Ins. Co. v. Holst Radiator Co.*, 88 F.3d 670 (8th Circ. 1996). Because Plaintiffs concealed and/or misrepresented material facts in the presentation of the claim, Defendant is entitled to judgment.

> **II.  The Measure of Damage is Governed by RSMo. §379.150, Missouri's "Partial Loss" Statute.**

In this case, Plaintiffs will be seeking to recover damages for loss of value to the home in question, and also for the loss of personal property contents contained therein. The evidence will

establish that the fire resulted in a partial loss to the buildings and its contents.  Specifically, with respect to the dwelling, Plaintiffs admitted during their depositions that the home was repairable after the fire.  Moreover, with respect to the personal property, it is undisputed that not all of the personal property was destroyed.  Specifically, several of the items had been moved out by Mr. Aziz prior to the fire. Additionally, several of the items were able to be cleaned and salvaged after the fire.

Accordingly, each of those losses is a "partial loss" and, as such, the measure of damages is governed by §379.150 RSMo.  In this case, under §379.150 – the partial loss statute – the measure of damages for both the dwelling and the personal property would be the difference between the fair market value of the property immediately before and immediately after the loss.

§379.150 RSMo., provides:

> Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire at the option of the insured.

It is well established that §379.150 provides the insured with an option to elect to either to accept from the insurer the repair of the property damaged, or a sum of money equal to the damage done.  *American Fam. Mut'l Ins. Co. v. Doug Rose, Inc.*, 841 S.W.2d 698, 701 (Mo. App. W.D. 1992); *Boren at 709; Non-Royalty Shoe Co. v. Phoenix Assurer Co., Ltd., of London, England* (Sup. 1918) 210 SW. 37, 277 Mo. 399.  Missouri case law has established that this provision controls over inconsistent provisions contained in any policy of insurance.  *Boren v. Fidelity & Co. of New York*, 370 S.W.2d 706, 709 (Mo. App. 1963); *Marti v. Economy Fire &*

*Cas. Co.*, 761 S.W.2d 254, 259 (Mo. App. E.D. 1988); *Abercrombie v. Allstate Ins. Co.*, 891 S.W.2d 838, 840 (Mo. App. 1994).

The Supreme Court of Missouri has set out the test for measuring damages when an insured has elected a cash payment under the partial loss statute.  The amount to which the insured is entitled under RSMo. §379.150 is a sum equal to the damage done on the property, which is not measured by the cost of repair, but rather is the difference between the fair market value of the property immediately before and immediately after the loss.  *Wells v. Missouri Property Ins. Placement Facility*, 653 S.W.2d 207, 210 (Mo. banc 1983); *see also*, *Fire Ins. Exchange v. Bowers*, 994 S.W.2d 110 (Mo. App. 1999).  In cases of partial loss, the burden is on the insured to prove the value of the property both before and after the casualty.  *Wells*, 653 S.W.2d at 211.

Missouri's valued policy statutes are not limited to real estate, but apply as well to personal property.  *Duckworth v. U.S. Fidelity & Guaranty Co.*, 452 S.W.2d 280, 282 (Mo. App. 1970).  The measure of damages for partial destruction of personal property is the difference between the reasonable market value before and after the occurrence.  *Id*. at 286.  "Fair market value" for purposes of computing damages to personal property is the price that the property will bring when it is offered for sale by an owner who was willing, but under no compulsion, to sell, and is brought by a buyer who is willing or desires to purchase, but is not compelled to do so.  *Bridgeforth v. Proffitt*, 490 S.W.2d 416, 425 (Mo. App. 1973).

Additionally, the Loss Settlement Provisions of the Allstate Insurance Policy are consistent with and track what is required by the Partial Loss Statute.  Specifically, the policy states, in pertinent part:

*\*\*\**

> **4.     Our Settlement Options**
>
> In the event of a covered loss, **we** have the option to:
>
> > (b)     pay for all or any part of the damaged, destroyed, or stolen property as described in Condition 5 "How We Pay For A Loss";
>
> ***
>
> **7.     How We Pay For A Loss**
>
> Under **Coverage A—Dwelling Protection**, **Coverage B—Other Structures**, and **Coverage C—Personal Property Protection**, payment for covered loss will be by one or more of the following methods:
> ***
>
> c.     Actual Cash Value
>
> > If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed, or stolen property, regardless of the number of items involved in the loss.
>
> ***

Missouri law defines actual cash value as the difference between the reasonable value of the property immediately before and after the loss. *Harris v. Am. Modern Home Ins*. Co., 571 F. Supp. 2d 1066, 1079 (E.D. Mo. 2008). The phrase "actual cash value" has also been treated by Missouri case law as meaning "fair market value." *Wells v. Mo. Prop. Ins. Placement Facility*, 653 S.W.2d 207, 210 (Mo.1983); *Garvin v. Acuity*, 3:11-CV-05105-BCW, 2012 WL 5197223 (W.D. Mo. Oct. 19, 2012).

> **IV.     In the event of a judgment in favor of Plaintiffs, Allstate is entitled to a setoff in the amount of $14,448.26.**

In Missouri, the law is that a party cannot be compensated for the same injury twice. *Ross v. Holten*, 640 S.W.2d 166, 173 (Mo. App. 1982). Generally, a person who sustained loss or injury may receive no more than just compensation, and he may not recover from all sources, in an amount in excess of damages sustained. *Weeks-Maxwell Cons. Co. v. Belger Cartage Serv.*, 409 S.W.2d 792 (Mo. App. 1966). Under Missouri law, an insurer should ultimately be credited for amounts paid to a mortgagee which constitute partial payment of an underlying policy claim. *Kilpatrick v. Hartford Ins. Co. Inc.*, 701 S.W.2d 755, 757-58 (Mo. App. W.D. 1985); *Crewse v. Shelter Mut. Ins. Co.*, 706 S.W.2d 35, 43 (Mo. App. W.D. 1986).

In this case, Allstate has paid $14,448.26 to Midland Mortgage and SafeGuard Properties, LLC, Plaintiffs' mortgagee at the time of the fire. This amount reflects a payoff of the outstanding balance, including principal and interest, as of the fire on May 12, 2006. Under Missouri law, because Allstate has made this payment, Allstate is entitled to a setoff in the amount of $14,448.26 against any judgment that may be awarded in favor of Plaintiffs.

**D.  Additional legal issues**

Allstate anticipates that there will be multiple additional legal issues related to the admissibility of certain evidence. Allstate will raise each of these anticipated issues in its Motions in Limine, which will be filed separately and in accordance with this court's Case Management Order.

**V.  Conclusion**

WHEREFORE, Defendant Allstate Insurance Company prays that this court enter judgment in its favor and against Plaintiffs, for its costs and attorneys' fees expended, and for such other and further relief as this court deems just and proper.

Respectfully submitted,

**BROWN & JAMES, P.C.**

*/s/ Stacey R. McCullough*
Robert L. Brady, #47522MO
Stacey R. McCullough, #65023MO
800 Market Street, Suite 1100
St. Louis, Missouri 63101-2501
(314) 421-3400
Fax (314) 421-3128 – FAX
rbrady@bjpc.com
smccullough@bjpc.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system this 5th day of July, 2016, to:

Jerryl T. Christmas, #45370
Attorney at Law
6101 Delmar Boulevard
Suite A, 2nd Floor
St. Louis, MO 63112
christmaslaw@yahoo.com
*Attorney for Plaintiffs*

*/s/ Stacey R. McCullough*

*13040244*